■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER C. HAGMANN, Appellant.—Mikoll, J. Appeal from a judgment of the County Court of Madison County (Castellino, J.), rendered October 18, 1990, convicting defendant following a nonjury trial of the crime of driving while intoxicated and the traffic offense of failure to keep right.

The primary question presented on this appeal is whether defendant's convictions of the misdemeanor of driving while

---

intoxicated and the traffic offense of failure to keep right are against the weight of the evidence. In our view the misdemeanor conviction is against the weight of the evidence and should therefore be reversed.

The charges against defendant grew out of a one-car accident that occurred on State Route 20 in the Town of Eaton, Madison County, shortly before 2:00 A.M. on November 27, 1988. Defendant was driving an automobile owned by his front seat passenger and date, Wanda Baucus, when it turned abruptly to the right, rolled over and came to rest on the shoulder of Route 20. Defendant and a rear seat passenger, Douglas Youngs, were ejected from the car at the time. Youngs died as a result of the accident and another rear seat passenger, Brett Houghton, was injured.

Defendant was eventually indicted by a Grand Jury and charged with these five counts: vehicular manslaughter in the second degree (Penal Law § 125.12), driving while intoxicated as a misdemeanor (Vehicle and Traffic Law § 1192 [3]), driving while intoxicated by having a blood alcohol content of .10% or more (Vehicle and Traffic Law § 1192 [2]), driving while ability impaired by drugs (Vehicle and Traffic Law § 1192 [4]) and failure to keep right (Vehicle and Traffic Law § 1120 [a]).[*]

At a nonjury trial, defendant testified that he had a full dinner the evening of November 26, 1988 before leaving his home with his date to attend a benefit party for an acquaintance who had been injured in an automobile accident. He had taken one or two puffs from a pipe containing marihuana at a brief stop on his way to the benefit to be held at a bar in the Village of Morrisville, Madison County. Defendant arrived at the bar at about 9:15 P.M. and, during the evening, drank two 12-ounce bottles of beer and two bar glasses of beer; just before leaving at about 1:30 A.M., defendant also drank two fireball shots. A fireball is served in a three-quarter ounce shot glass and is about 40-proof alcohol in alcohol content. Defendant also said that he gave several of his unfinished beers to Baucus to drink.

When they left the bar, defendant, Baucus, Youngs and Houghton went to a nearby convenience store. In the parking lot they met and talked with three teenage female acquaintances whom they invited to join them at Houghton's house. On leaving the store defendant drove his three passengers east on Route 20. The car carrying the three teenage girls

---

[*] Although the indictment was dismissed by order of County Court, this court reversed said order and reinstated the indictment (160 AD2d 1125).

followed. As defendant drove up a hill on Route 20, a small car passed him. Slightly over the top of the hill defendant passed the same small car not knowing it was the girls' car. He then pulled back in the right hand lane and proceeded down the hill at 50 to 60 miles per hour. Defendant testified that, at this point, Baucus reached over and pushed the steering wheel to the left. He thought she was "goofing around" so he gave the wheel a slight tug to the right, but she held on. As they were getting closer to the other side of the road, defendant testified that he yanked the wheel again and Baucus let go. The car went into a slide and he hung on to the wheel. Defendant also stated that at some point he asked Baucus why she grabbed the wheel.

Baucus testified that defendant was okay to drive when they left the bar. She said he drank three bottles of beer, four glasses of draught beer, two shots of tequila and three fireball shots. She also denied that she grabbed the wheel or said that she did. On cross-examination, Baucus admitted that defendant gave her some of his unfinished beers and that he did not necessarily consume all of the beers that he had ordered. She was not at all certain of the amount of alcohol that he consumed. There was other testimony as to his sobriety and that Baucus stated after the accident that she had grabbed the wheel.

The applicable principles are clear. A verdict of guilty may be set aside where it appears that the trier of fact did not give the evidence the weight it should have been accorded (*People v Bleakley,* 69 NY2d 490, 495). Where, as here, the People have prevailed at trial, the evidence must be viewed in the light most favorable to the People and it is presumed that the trier of fact credited the People's witnesses (*People v Montanez,* 41 NY2d 53, 57). Moreover, unless the verdict is clearly against the weight of the evidence, it is not to be disturbed (*People v Bigelow,* 106 AD2d 448, 449).

The common-law prohibition against driving while one's ability is impaired and driving while intoxicated both require a finding that "the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (*People v Cruz,* 48 NY2d 419, 427, 428, *appeal dismissed* 446 US 901). However, "[d]riving while intoxicated is a more serious offense * * * and thus involves a greater degree of impairment" (*supra,* at 427 [citation omitted]). The Court of Appeals also stated in *People v Cruz (supra)* that: "the Legislature [has]

recognized that the average person can consume a certain amount of alcohol without impairing his ability to operate a motor vehicle as he should. Otherwise the Legislature would not have provided that proof of .05 of 1% or less of blood alcohol content is prima facie evidence that the driver was not impaired or intoxicated * * *. And the Legislature also recognized that some individuals may be able to consume greater amounts of alcohol without being impaired, as would the average driver * * *. Thus the impairment statute, by simply providing prima facie standards, takes into account the 'subjective' tolerance of individuals in determining the ability to drive possessed by a defendant at the time of arrest (supra, at 426 [citations omitted]).

Considering the foregoing, it appears that in the instant record there is insufficient evidence to warrant the conclusion that defendant's consumption of alcohol caused him to be incapable of operating a vehicle as a reasonable and prudent driver. There is no testimony that any of his physical or mental abilities were impaired before impact to a degree sufficient to render him intoxicated. No chemical test results showing defendant's blood alcohol content were introduced into evidence. The only evidence of any actual impairment was that of a nurse who testified that, when brought into the hospital on a stretcher wearing a neck brace and hooked up to an intravenous needle, she observed that defendant had a number of abrasions, his eyes looked dazed and his speech was slow. The nurse detected an odor of alcohol on his breath but felt that he did not appear highly intoxicated. The evidence of speed and of driving over the center line of the roadway is equivocal in the circumstances of this case on the issue of the degree of impairment and not sufficient to warrant a finding of intoxication.

However, there is sufficient evidence in the record, based on the testimony of the teenagers in the car following defendant and the physical characteristics of the roadway, to sustain defendant's conviction for failure to keep right.

Yesawich Jr. and Harvey, JJ., concur. Mahoney, P.J., concurs in part and dissents in part in a memorandum in which Weiss, J. concurs.

Mahoney, P. J. (concurring in part and dissenting in part). Because we disagree with the majority's conclusion that there is insufficient evidence to support defendant's conviction of driving while intoxicated, we respectfully dissent from that part of the majority statement which would reverse defendant's conviction for that crime. The only witness with defendant throughout the evening testified that defendant consumed 13 drinks, including three bottles of beer, four draught

beers, two shots of tequila and four schnapps "fireballs", within a four-hour time period (cf., People v Hagmann, 160 AD2d 1125). Significantly, defendant consumed the six shots of alcohol within a half hour of attempting to drive. According to the testimony of witnesses following defendant's vehicle, defendant drove at speeds reaching 60 miles per hour along a sharply curving two-lane highway, crossing into the oncoming lane of traffic. The nurse who attended defendant after the accident testified to defendant's dazed eyes, slow speech and breath smelling of alcohol. The nurse also testified that, although defendant did not appear to be "[s]tumbling down drunk", "[h]e had been drinking". Given that we are to view the evidence in the light most favorable to the prosecution (see, People v Contes, 60 NY2d 620) and that "[t]he resolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the trier of fact, which saw and heard the witnesses" (People v Ryan, 161 AD2d 677), we are of the view that the verdict was not against the weight of the evidence. Accordingly, we would affirm the judgment of conviction in its entirety.

Ordered that the judgment is modified, on the facts, by reversing the conviction of driving while intoxicated and dismissing the count in the indictment therefor, and, as so modified, affirmed.