OPINION OF THE COURT
Salvatore A. Alamia, J.
The defendant is charged with driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (3), reckless driving in violation of Vehicle and Traffic Law § 1212, speeding in violation of Vehicle and Traffic Law § 1180 (a), and driving the wrong way in violation of Vehicle and Traffic Law § 1127 (b). On August 13, 2008, a Dunaway and Huntley hearing was held on consent, pursuant to the People’s voluntary disclosure form, to determine the admissibility at trial of evidence obtained against the defendant. The parties were given the opportunity to submit written closing statements. While the defendant’s closing statement has been received, the People’s has not and is deemed waived.
At the outset of the hearing, the People informed the court that the compact disc containing the 911 calls and any radio dispatches concerning this incident had been destroyed pursuant to the policy of the New York State Police, which retains such recordings for only six months from the date of arrest unless their production has been requested, and that the People had not made a request for the CD until one week before the hearing.
The sole witness at the hearing was Trooper Peter Nunziata, a trooper with the New York State Police, who testified on behalf *788 of the People. Based upon the credible evidence adduced at the hearing, the court makes the following findings of fact and conclusions of law.
Findings of Fact
Trooper Nunziata has been a trooper with the New York State Police for eight years, and is assigned to patrol the parkways in Suffolk County. On September 10, 2007, Trooper Nunziata was on patrol with Trooper Lenz on a 7:00 p.m. to 7:00 a.m. tour of duty. At approximately 10:44 p.m. on that date, the troopers were patrolling on the Southern State Parkway between Route 231 and Heckscher State Park in the county of Suffolk, when they received a radio dispatch to respond to the scene of a wrong-way accident just west of the bridge at exit 44, on the eastbound side of Southern State Parkway. The radio dispatcher also reported that 911 calls had been received regarding a vehicle traveling the wrong way on the Southern State Parkway, that the vehicle was speeding, and that it was involved in an accident.
Upon arriving at the scene of the accident, Trooper Nunziata observed that two cars, a 1994 Honda Civic and a 2006 Nissan Altima, had been involved in a head-on collision. Both drivers were still seated in their cars behind the steering wheels, and both had sustained injuries from the force of the impact. The driver of the 1994 Honda Civic, identified by Trooper Nunziata as the defendant, was bleeding from the ear and appeared to have sustained a head injury. Trooper Nunziata attempted to converse with the defendant, but he was mumbling and incoherent and appeared to be only semiconscious. The Trooper detected a strong odor of alcohol emanating from the defendant’s breath and observed that his eyes were bloodshot and watery. The Trooper did not recall whether the air bag had deployed on the defendant’s car, although the MV-104 accident report indicated that it had.
Trooper Nunziata could not recall whether he or his partner, Trooper Lenz, called for ambulances to respond to the scene, but a call for medical assistance was made, after which Trooper Nunziata directed his attention to securing the scene of the accident and maintaining traffic control. The defendant was transported by ambulance to Southside Hospital, and Trooper Nunziata followed in his patrol car. An EMT was unable to draw a sample of the defendant’s blood when requested by the Trooper, due to the fact that an IV had already been started *789 which, the Trooper was told, affected the condition of the defendant’s veins. While at the hospital, the Trooper again observed a strong odor of alcohol on the defendant’s breath and that his eyes were bloodshot and watery. Based on his observations of the defendant’s physical condition and the accident, Trooper Nunziata concluded that the defendant was intoxicated. The Trooper placed the defendant under arrest for driving while intoxicated at 12:28 a.m., but the defendant had to remain at the hospital for medical treatment and could not be taken into custody.
On September 21, 2007, at approximately 5:44 p.m., the defendant came to the Trooper’s barracks in response to an appearance ticket to give a statement regarding the accident. Trooper Nunziata did not recall who spoke to the defendant when he first arrived. The Trooper does not speak or understand Spanish and testified that the defendant had trouble speaking English. Although he believed the defendant spoke some English, he could not recall any specific conversation he may have had with the defendant and repeatedly referred to the existence of a language barrier, which made it necessary to give the defendant a printed version of the constitutional rights in Spanish. In addition, Trooper Cepeda, a Spanish-speaking trooper, was present and had a conversation with the defendant in Spanish, although Trooper Nunziata did not understand the conversation.
Trooper Nunziata testified that the defendant was also given the constitutional rights in English, although he did not recall if he read the defendant the rights in English from a printed form or if the defendant was handed the form to read to himself. The defendant did, however, place his initials on the English form after each line stating one of the rights. The Trooper testified that he then asked the defendant what had happened regarding the accident, and that the defendant gave the following statement:
“On Monday 9/10/07, I was driving a Honda Civic on the Southern State Parkway after having 7 or 8 beers. When I was driving on the parkway I don’t remember being in an accident. I am very sorry, it is my first time drinking and driving. I’ve never had a problem with drinking and driving before. I’ve never been arrested and it won’t happen again.”
The Trooper did not recall if he asked the defendant questions to elicit this statement. The Trooper maintained, however, that he wrote the defendant’s statement down verbatim, and that *790 the defendant read the statement over and initialed it, which the Trooper took as indication that the defendant agreed with its content.
Conclusions of Law
Probable cause for a driving while intoxicated arrest exists if the arresting officer can demonstrate reasonable grounds to believe the defendant had been driving in violation of Vehicle and Traffic Law § 1192. (See People v Kowalski, 291 AD2d 669 [3d Dept 2002].) In order to meet the legal standard for intoxication, a defendant must be shown to have consumed alcohol to the point that he is “incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver.” (People v Hagmann, 175 AD2d 502, 504 [3d Dept 1991], quoting People v Cruz, 48 NY2d 419, 428 [1979], appeal dismissed 446 US 901 [1980]; People v Ardila, 85 NY2d 846 [1995].)
Trooper Nunziata learned from the radio dispatcher that 911 callers had reported seeing a vehicle traveling the wrong way on the Southern State Parkway, that the vehicle was speeding, and that it was involved in an accident. No testimony was elicited, however, to establish the factual basis for the Trooper’s conclusion that it was the defendant, and not the other driver, who had been speeding and driving the wrong way on the parkway. As previously noted, the 911 calls and radio dispatches were not preserved, and the Trooper’s hearing testimony regarding the circumstances of the accident did not establish that the defendant’s vehicle had proceeded the wrong way. The defendant’s bloodshot and glassy eyes similarly are not valid indicia of his intoxication, since the condition of his eyes was just as likely caused by the deployment of his air bag and the head injury he sustained in the accident. (See People v St. John, 6 Misc 3d 127[A], 2004 NY Slip Op 51689[U] [App Term, 9th & 10th Jud Dists 2004].)
The Trooper’s remaining observation of the odor of alcohol on the defendant’s breath raised a possibility that the defendant may have consumed alcohol, but was not sufficient, in itself, to provide the Trooper with probable cause to arrest the defendant for driving while intoxicated. (See People v Hagmann, supra-, People v St. John, supra-, People v Wenz, 12 Misc 3d 134[A], 2006 NY Slip Op 51194[U] [App Term, 9th & 10th Jud Dists 2006]; People v Belakh, 21 Misc 3d 135[A], 2008 NY Slip Op 52215[U] [App Term, 2d & 11th Jud Dists 2008]; Gerstenzang, Handling the DWI Case in New York § 1:18 [2007-2008 ed]; *791 CPL 140.10 [1].) The People thus have failed to establish that the defendant’s arrest was based on probable cause, and any evidence obtained as a result of the arrest, including evidence of the defendant’s statement, shall be suppressed on that ground.
Turning to the Huntley issue, the determination as to whether a defendant has made a knowing, voluntary and intelligent waiver of his rights is “essentially a factual issue that must be determined according to the circumstances of each case.” (People v Williams, 62 NY2d 285, 288 [1984].) A defendant with limited command of the English language must have sufficient understanding to appreciate the import of the Miranda warnings in order to effect a valid waiver of his rights. (See People v Madrid, 52 AD3d 530 [2d Dept 2008]; People v Alexandre, 215 AD2d 488 [2d Dept 1995], lv denied 86 NY2d 789 [1995].) For a valid waiver to have occurred, the People must show that the defendant understood that there was no need to speak to the police, that he had a right to the assistance of a lawyer and that whatever statement he made could be used in court by the prosecution. (See People v Alexandre, supra-, see also People v Vanegas, 237 AD2d 469 [2d Dept 1997].)
Trooper Nunziata made repeated reference to the existence of a language barrier with the defendant and the need to explain his rights to him in Spanish. The Trooper did not understand Trooper Cepeda’s conversation with the defendant in Spanish, however, and his testimony alone was not sufficient to establish that the defendant understood his constitutional rights and knowingly and voluntarily waived them. In addition, the statement purportedly given by the defendant displays a fluency in the English language which is not consistent with the Trooper’s account of the defendant’s difficulties in speaking English. Even if the People had demonstrated probable cause for the defendant’s arrest, the proof at the hearing did not establish beyond a reasonable doubt that the defendant understood the Miranda warnings, whether in English or in Spanish, nor did it establish that the statement was an accurate transcription of his actual words. (See People v Madrid, supra.)
The court accordingly finds that the People have not met their burden of demonstrating beyond a reasonable doubt that the defendant’s waiver of his rights was knowing or voluntary, and the statement shall be suppressed on that ground as well.