People v Williams (2024 NY Slip Op 50709(U))

[*1]

People v Williams

2024 NY Slip Op 50709(U)

Decided on June 11, 2024

Criminal Court Of The City Of New York, Bronx County

González-Taylor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 11, 2024
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Andrew Williams, Defendant.

Docket No. CR-018720-23BX

For the Defendant: 
The Bronx Defenders
by: Ivan Marchena, Esq., and Syeda Malliha, Esq.
For the People: 
Darcel D. Clark, District Attorney, Bronx County
by: ADA Asiza Azad and ADA Edward Kamber

Yadhira González-Taylor, J.

Defendant was arrested and charged with operating a motor vehicle while under the influence of alcohol or drug (Vehicle and Traffic Law ["VTL"] § 1192[2]), operating a motor vehicle while under the influence of alcohol or drug (VTL § 1192 [2-a][a]), operating a motor vehicle while under the influence of alcohol or drug (VTL § 1192[3]), Class A Misdemeanors, and operating a motor vehicle while under the influence of alcohol or drug (VTL § 1192[1]), a traffic infraction.
On February 2, 2024, via omnibus motion, defendant moved for suppression of all evidence regarding his arrest pursuant to Criminal Procedure Law ("CPL") §§ 710.20(1) and 710.60 and for suppression of any statements allegedly made by him, and any other tangible or testimonial fruits of the search and seizure pursuant to CPL §§ 710.20 (3) and 710.60 or, in the alternative, for a Dunaway/Huntley/Mapp hearing.
On March 25, 2024, Honorable Judge E. Derron Bowen granted a Dunaway/Huntley/Mapp hearing. Prior to the hearing the Court noted that no statement notice pursuant to CPL § 710.30(1)(a) was ever served by the People. As such, defense withdrew their previous request for a Huntley hearing. A Dunaway/Mapp hearing was conducted on May 9, 2024. The People called one witness, Police Officer (PO) Akeila Dehaney who testified credibly. The defense did not call any witnesses.
Defendant's motion to suppress all evidence under Dunaway/Mapp is GRANTED for the reasons set forth below.
Findings of Fact
PO Akeila Dehaney, shield number 10305 of the 48th Precinct testified that she has been a police officer for two years and her duties are to respond to 911 calls. She added that she has personally conducted approximately 21 arrests and has participated in approximately 10 arrests. Of those arrests, about three have been for driving under the influence. She indicated she trained in the police academy on basic law and procedure, use of firearms and her training includes portable breath test training and training in the recognition of intoxicated drivers and is professionally and personally familiar with the signs of an intoxicated person.
PO Dehaney further testified that she responded to a 911 call of a vehicle collision at the Bronx River Parkway and E. 177th Street with her partner, PO Hernandez. When PO Dehaney and PO Hernandez arrived at the scene of the collision, they were met with Emergency Medical Technicians ("EMTs") who informed them that there had been a collision of a Honda and a BMW. PO Dehaney determined the driver of the Honda was in an ambulance and the driver of the BMW was standing outside of the ambulance. The EMT informed PO Dehaney that the operator of the Honda (defendant) rear ended the BMW. The EMT also informed PO Dehaney that defendant smelled of alcohol and PO Dehaney called a supervisor. PO Dehaney spoke with defendant while he was in the ambulance and noted that his speech was slurred but made no other observations. She indicated that she and her supervisor speculated that defendant was impaired with alcohol. The supervisor responded to the scene, spoke to defendant and defendant was arrested for driving while intoxicated. There was no testimony regarding the substance of the conversation between the supervisor and defendant.
Defendant was removed to the 45th precinct where an Intoxilyzer test was conducted along with other tests. The results of the Intoxilyzer showed that defendant had .26 Blood Alcohol Content (BAC). After the Intoxilyzer was administered, defendant submitted to an eye test but was not following directions of the highway patrol. Defendant was asked to take a balance test, which he refused by indicating his leg was hurting. After Miranda warnings were administered, defendant refused to answer questions.
PO Dehaney indicated that based on the totality of the circumstances she believed defendant to have been driving in an intoxicated condition.
Upon cross examination, PO Dehaney indicated that when they arrived on scene, defendant was not in the car, so she did not see him operating the vehicle. She indicated upon her arrival, defendant was inside the ambulance seated and receiving medical care from the EMT. Further, that she spoke with EMT Lewis and asked whether he (defendant) was intoxicated and EMT Lewis indicated he was unsure if defendant was intoxicated. Based on the Body Worn Camera ("BWC"), PO Dehaney testified that PO Hernandez spoke with defendant inside the ambulance. PO Hernandez asked defendant if he had anything to drink, and defendant denied drinking and taking medications other than high blood pressure medication. PO Dehaney further testified that PO Hernandez turned to her and said he could not smell alcohol and they decided to call a supervisor. PO Dehaney testified as shown in the BWC that they asked the EMT if he (defendant) was intoxicated, and the EMT shrugged his shoulder suggesting that he was unsure about whether defendant was intoxicated. 
PO Dehaney further testified that she and PO Hernandez searched the front and back seats of the vehicle defendant had been driving and did not find any alcoholic beverages or any containers containing alcohol or any remnants of alcohol. She further indicated that she did not recall seeing any damage and indicated she took pictures of the vehicle. Additionally, that she did not see defendant vomiting but his clothes were disorderly, but he did not have any bottles or [*2]cans on his person, nor did he soil or urinate on himself.
PO Dehaney further testified that prior to seeing defendant in the ambulance, she had never seen him, never spoke to him, didn't know where defendant was born or whether his first language was English. Additionally, she didn't know if he had an accent or if he had preexisting injuries to his body or feet or if he had any injuries to his head.
PO Dehaney reiterated that defendant had slurred speech; but she did not smell alcohol on his breath and neither did the other police officers and she explained that they did not get close enough to smell it as they were approximately ten feet away from him when he was in the ambulance and there were other people including the EMTs inside the ambulance. She indicated she has been trained on performing field assessments for intoxicated drivers which can be performed in the field after pulling someone over and that the tests can confirm whether someone is intoxicated. Further, that these tests can be performed prior to taking someone to the precinct. PO Dehaney agreed with defense counsel that she did not perform any sobriety tests, nor did she ask the defendant to stand in one place, walk in a line or administered a preliminary breath test. She added that no one asked him to take any field sobriety tests at the scene. 
During redirect, PO Dehaney indicated that they did not have a portable breath test to be able to administer this type of sobriety test and added that EMT Ashley had to move the defendant's vehicle because he was unable to move the car. There was no other testimony provided as to the reasons why defendant was unable to move the car. Regarding the defendant's accent, PO Dehaney indicated that she is familiar with the Jamaican accent as it is a kind of English and she learned that defendant is from Jamaica. She indicated she too is Jamaican and has encountered people with Jamaican accents before and knew defendant' to be exhibiting slurred speech, in her opinion.
Defense Argument
The defendant averred that the police officers lacked probable cause to arrest the defendant in that when they arrived, defendant was in an ambulance and the police based their opinion on defendant's intoxication based on information received from the EMT who indicated they smelled alcohol on defendant and based on slurred speech. Defendant further argued that the People failed to establish that he was driving because their sole witness did not see him driving, nor did any other officer. Further that the officer's partner, PO Hernandez told PO Dehaney that he was unsure if defendant was intoxicated, and PO Hernandez also could not smell alcohol on defendant as well as the EMT suggested he was not intoxicated. Further that when questioned by the police officers they could not smell alcohol on defendant's person, and he denied drinking. Further that a search of the car did not result in the confiscation of any evidence of alcohol in the car or on defendant's person.
Defendant argues that even where a defendant admitted to drinking hours before driving and was lethargic and had alcohol in his possession it was insufficient to find that the defendant was driving while intoxicated, relying on People v Vandover, 20 NY3d 235, 239 (2012). Further that mumbling or slurred speech could have been a result of the car accident where an accident alone does not warrant probable cause, citing People v Alberto, 22 Misc 3d 786; 877 NYS2d 628 Dist Ct, Suffolk County, NY (2008). Further that, even where there was evidence of a defendant showing dazed eyes and odor of alcohol, this was not sufficient probable cause, referencing People v Haggman, 175 AD2d 502; 572 NYS2d 952 App Div, 3d Dept (1991). Defendant urged the Court to suppress based on there only being the factor of slurred speech because evidence of an alcohol smell came from hearsay sources and the Court, according to defendant, did not [*3]receive evidence regarding accident circumstances and operation.
The People's Argument
The People argued that they established that defendant was driving through the testimony of PO Dehaney who testified that when she arrived, and the EMTs informed her that the defendant was the driver that caused a collision with another vehicle. Additionally, that the same EMTs told PO Dehaney that defendant was in the ambulance. As to intoxication, the People argued that there is no one set formula of what needs to be present to determine probable cause based on intoxication. The People rely on People v Poje, 270 AD2d 649 App Div 3rd Dept; 706 NYS2d 733 (2000), where the court found probable cause where there was impaired speech, instability, and an odor of alcohol. The People further relied on People v Spencer, 289 AD2d 877 App Div 3rd Dept; 736 NYS2d 428 (2001) where probable cause existed where the officer observed defendant sleeping behind a parked vehicle and defendant had slurred speech and an odor of alcohol, despite the absence of alcoholic containers.
The People argue that the fact that the officers didn't personally smell alcohol is immaterial because they did not get close as PO Dehaney testified, they were 10 feet away from defendant, so they were not close enough to smell it and that it was the EMTs who were close enough to defendant and informed the police officers of the smell of alcohol. The People further argued that PO Dehaney could tell the difference between what a Jamaican accent and slurred speech is; in that, is she is familiar with the Jamaican accent and it's not a different language. The People further relied on People v Evans, 81 Misc 3d 1216 (A); 2023 NY Slip Op 51352 (U) (2023), where the court found probable cause where the police officers saw an unconscious individual and upon smelling alcohol arrested defendant, emphasizing that the Evans court found alcohol smell alone was enough to indicate probable cause.
Conclusions of Law
Mapp/Dunaway
The People have the burden of presenting sufficient evidence of reasonable cause to show the legality of police conduct at suppression hearings (see People v Baldwin, 25 NY2d 66, 302 NYS2d 571, 250 NE2d 62 [1969]; People v Malinsky, 15 NY2d 86, 262 NYS2d 65, 209 NE2d 694 [1965]). The People meet their burden when they present credible evidence and facts, not just conclusions or beliefs of their witnesses (see People v Berrios, 28 NY2d 361, 321 NYS2d 884, 270 NE2d 709 [1971]). The People must demonstrate that the circumstances surrounding the officer's observations provided the officer with the authority to act. Courts assess the scope of intrusion permissible under a given set of circumstances while weighing the officer's safety and the public interest against the individual's personal liberty (see People v De Bour, 40 NY2d 210, 386 NYS2d 375, 352 NE2d 562 [1976] citing Terry v Ohio, 392 US 1, 88 SCt 1868, 20 LEd2d 889 [1968]).
Once the People meet their initial burden, the burden shifts to the defendant to demonstrate, by a preponderance of the evidence, the illegality of the police conduct in question (see People v Berrios, supra). Illegally obtained evidence is inadmissible at trial (see Mapp v Ohio, 367 US 643, 81 SCt 1684, 6 LEd2d 1081 [1961]).
Here, the People failed to provide sufficient evidence of reasonable cause to show that at the time when defendant was arrested, PO Dehaney had probable cause to believe that defendant had been operating a vehicle while intoxicated in violation of VTL § 1192.
The basis for determining intoxication while driving requires an analysis of the totality of the circumstances where it is "more probable than not that the defendant [was] actually [*4]impaired" (see People v Vandover, 20 NY3d 235, 239 [2012]), and an arrest for driving while intoxicated is lawful if there is evidence that an officer has determined that there is reasonable cause to believe that a driver was intoxicated. This determination can be based on a diverse set of circumstances such as the manner and form of driving, the presence of an accident, physical appearance, among others (see People v Hohmeyer, 70 NY2d 41, 43-44 [1987]). Further, manner of speech can be considered as one factor, such as slurred speech, People v Sanchez, 54 Misc 3d 133(A) (App Term 1st Dept 2017), and admissions by defendant (see People v Cullison, 8 Misc 3d 128[A] [App Term 9th and 10th Dists 2005]; People v Millet, 57 Misc 3d 1225[A], 92 NYS3d 705 [NY Crim Ct 2017]).
This arrest must be evaluated by "the totality of the circumstances," as observed by PO Dehaney prior to removing the defendant to the precinct as he was arrested at the scene of the automobile accident. The People here rely on PO Dehaney's observation that defendant evinced slurred speech when PO Dehaney, her partner, and supervisor all spoke to defendant (see tr at 14-15). None of the officers who responded to the scene of the accident indicated they could smell alcohol on defendant (see tr at 29, 34-35). PO Dehaney relied on the EMT to indicate to her that they could smell alcohol on defendant, but EMT Lewis was unsure of whether defendant was intoxicated as indicated by a shrugging of the shoulders (People's exhibit 1a — BWC) and as admitted to during cross examination by PO Dehaney (see tr at 30).
Conversely, the police action taken at the scene of the accident was insufficient to determine whether probable cause existed to believe that defendant had operated his vehicle while intoxicated or even impaired. PO Dehaney and her supervisor operated with limited information received by medical personnel who responded to the accident. PO Dehaney, PO Hernandez, or Sergeant Rojas could have administered field sobriety tests other than the portable breath test (PBT) which was not available. PO Dehaney indicated she has been trained in determining signs of intoxication and administering field sobriety tests (see tr at 8-9), but did not, prior to arresting defendant, administer a field sobriety test, and neither did her partner or her supervisor (see tr at 36-37). The record demonstrates that none of the officers tried to get close enough to defendant to ascertain whether defendant smelled of alcohol and instead relied on the one factor of slurred speech to determine intoxication (see tr at 34-35). PO Dehaney even used the words "speculated" to indicate the level of suspicion as to whether defendant was intoxicated (see tr at 15). Speculation by definition is to form a theory or conjecture about a subject without firm evidence (see New Oxford Dictionary [3d ed 2010]). Thus, speculation does not rise to the level of probable cause.
The Court recognizes there is no set formula to determine probable cause based on intoxication. This is precisely why the Court must weigh the totality of the circumstances on a case-by-case basis. In weighing the circumstances of defendant's arrest as to whether there was probable cause, the Court understands that the People rely on two factors, one of which was not directly observed by the sole witness they presented, slurred speech, as observed by PO Dehaney, and the smell of alcohol as described by the EMT. However, the same EMT also indicated they were unsure as to whether defendant was intoxicated. Slurred speech could indicate a variety of factors aside from intoxication, including disorientation from having been injured in the car accident, a neurological disorder, a speech impediment, or an accent. This uncertainty and speculation on the part of the arresting officer required further investigation by the People's only witness, her partner, or her supervisor, none of which took the initiative to conduct further field sobriety tests to verify if defendant was intoxicated when he was involved [*5]in the car accident. 
Therefore, the evidence adduced at the hearing was insufficient to establish that PO Dehaney had probable cause to arrest defendant. Thus, the evidence flowing from this arrest, the observations of the police, the results of sobriety tests conducted at the 45th precinct, and the results of the Intoxilyzer are suppressed.
Based upon the foregoing, defendant's Mapp/Dunaway motion to suppress all evidence is GRANTED.
The Sandoval/Ventimiglia portions of defendant's motion are referred to the trial court's discretion.
This constitutes the decision and order of the Court.
Dated: June 11, 2024
Bronx, New York
Hon. Yadhira González-Taylor, J.C.C.