Soilepfi, J.
The defendant appeals,' pursuant to permission granted by an Associate Judge of this court, from a judgment of the Appellate Term, Second Department, which affirmed a judgment of the Criminal Court of the City of New York, Kings County, convicting him of illegal possession of narcotics and imposing a suspended sentence.
While under arrest on an unrelated burglary charge, defendant dropped a white envelope which had his name and address on it. The arresting officer retrieved the envelope and upon opening it found two round pills which the defendant told him contained amphetamine or dolophine.[1] The officer thereupon charged the defendant with possession of narcotics.
Following a hearing, defendant’s motion to suppress the evidence was denied.
On the trial, the police chemist who analyzed the seized substance testified that it was a narcotic called methadone or dolophine. Methadone is not mentioned in any of the provisions of either the Penal Law or Public Health Law pertaining to the unlawful possession of narcotic drugs.[2] Neither is it specifically mentioned in section 3301 (subd. 38) of the Public Health Law which defines narcotics. That section provides: “‘Narcotic’, ‘narcotics’, or ‘ narcotic drugs’ shall mean opium, coca leaves, marihuana (cannabis, sativa), pethidine (isonipecaine, meperidine), and opiates or their compound, manufacture, salt, alkaloid, or derivative, and every substance *69 neither chemically nor physically distinguishable from them and exempted and excepted preparations containing such drugs or their derivatives, by whatever trade name identified and whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis or by a combination of extraction and chemical syntheses, as the same are designated in the federal narcotic laws and as specified in the administrative rules and regulations on narcotic control as promulgated by the commissioner pursuant to the authority vested in him under section thirty-three hundred two of this article.”
Section 3302 referred to in section 3301 (subd. 38) provides: “ 1. The commissioner is hereby authorized and empowered to make any rules, regulations and determinations which in his judgment may be necessary or proper to supplement the provisions of this article to effectuate the purposes and intent thereof or to clarify its provisions so as to provide the procedure or details to secure effective and proper enforcement of its provisions.”
Methadone is defined as a narcotic under the Federal law and in the regulations promulgated by the Commissioner of Health. (10 NYCRR 80.48 [a] [6] [ii] [a].)
At the trial defendant contended that the references in section 3301 (subd. 38) of the Public Health Law to the Federal narcotic laws and the Commissioner of Health’s rules and regulations violated the State constitutional provision against incorporation by reference contained in section 16 of article III of the- New York State Constitution. He also contended that, to the extent that section 3302 is construed as authorizing the Commissioner of Health to determine what drugs it shall be a crime to possess in this State, that section is an unconstitutional delegation of the legislative power under section 1 of article III of the New York Constitution.
These contentions, rejected below, are again asserted on this appeal. We need not pass upon them, however, if defendant is correct in his other contention that the evidence should have been suppressed.
At the suppression hearing Patrolman De Angelo called by the defendant testified that he had neither an arrest nor search warrant for the defendant, but had arrested him on a burglary *70 charge. According to the patrolman: “ When I placed him under arrest for burglary he took a white envelope out of his right-hand pocket and dropped it to the ground, I retrieved it, it was addressed to the defendant with his name and address on it. I asked him did it belong to him, I felt a substance inside, I opened it up and it contained two pills. At that time he mentioned some kind of drug which he said wasn’t amphetamine. After a subsequent laboratory test it was found to be narcotics.” The patrolman further testified that he was sick when the burglary case came up but to his knowledge it was dismissed for lack of evidence.
The defendant then rested and the People, without cross-examining the patrolman or offering any other evidence, also rested. Defendant moved “ for a dismissal on the grounds the People have failed to make out a prima facie case ”. The court denied the motion, stating that “ The officer had reasonable grounds to believe that a crime was being committed in his presence ”.
In our opinion, based upon this record, the evidence should have been suppressed. It is axiomatic that, in the absence of a valid abandonment of the property, a search, not authorized by consent or a search warrant, is reasonable only if conducted as incident to a lawful arrest.
In the instant case there was no consent and the facts do not disclose the requisite intention to constitute an abandonment. Moreover, even if the facts would warrant a finding of an abandonment, there could be no abandonment as a matter of law if the defendant had been unlawfully arrested in the first instance. The primary illegality would taint the abandonment and, as such, the abandonment could not justify the admission of the evidence (People v. Williams, 24 A D 2d 274; Fletcher v. Wainwright, 399 F. 2d 62).
In People v. Malinsky (15 N Y 2d 86, 91) we made it quite clear that for the People to prevail at a suppression hearing they must go “ forward in the first instance with evidence to show that probable cause existed * * * in sustaining the legality of a search made, without a warrant, as incident to an arrest ”. While the ultimate burden of proof is on the defendant, the People must, in order to make out a prima facie case at the suppression hearing, come forward with some evidence *71 to show probable cause. They may not simply assert that the defendant was under arrest and that the search was conducted pursuant to that arrest.
The record in this case discloses that the People failed to meet the burden that is theirs.
The mere dropping of a white envelope with defendant’s name and address on it, without more, is not sufficient to establish probable cause to believe that a crime is being committed (People v. Corrado, 22 N Y 2d 308).
Under the circumstances of this case, therefore, the evidence should have been suppressed. In the view that we have taken of this case, it is not necessary to pass upon defendant’s other contentions.
Accordingly, the judgment appealed from should be reversed and the motion to suppress the evidence granted.
Chief Judge Fuld and judges Burke and Breitel concur with Judge Scileppi; Judges Bergan and Jasen dissent and vote to affirm in the following memorandum: The basic question is whether the arrest for burglary was made upon probable cause. If the arrest was good, the subsequent discharge is not decisive on this question. There was a failure by defendant at the hearing to assert, as he could have done, lack of probable cause for the arrest for burglary. It must be presumed, therefore, to have been sufficient ground on this record, since it is not shown to be bad. If that is so, and there was a valid arrest, the rest of the case falls into place and there was a right to search as well as retrieve.
Judgment reversed and case remitted to the Criminal Court of the City of New York for further proceedings in accordance with the opinion herein.

. In the complaint, the officer stated that the defendant told him that the pills contained amphetamine. On the trial, however, the officer testified that the defendant told him that the pills contained dolophine.

. Section 3305 of the Public Health Law provides in general terms that "It shall be unlawful for any person to * * * possess * * * any narcotic drug, except as authorized in this article”.