STATE OF INDIANA *v.* ARLIE RAY SMITHERS.

[No. 1269S312. Filed June 7, 1971.]

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellant.

*Lawrence D. Renfro,* of New Castle, for appellee.

DeBruler, J.—The defendant was charged with the possession of marijuana under I.C. 1971, 35-24-1-2, being Burns § 10-3520 (c). Prior to trial the defendant filed a motion to suppress the marijuana and the evidence concerning its seizure on the grounds that it had been obtained in violation of defendant's constitutional rights. The trial court granted defendant's motion and ultimately the defendant was acquitted in a trial without jury. The State appeals on a reserved question of law pursuant to I.C. 1971, 35-1-43-1, being Burns § 9-

2101, alleging that the trial court erred in suppressing the evidence.

The appellant did not present any evidence at the pre-trial hearing on the motion and the only two witnesses were put on by the defendant. The defendant testified that around midnight on October 17th, 1968, he was riding in a car with three other males on the streets of New Castle, Indiana, when two uniformed policemen pulled them over and checked the driver's operating license. The officers asked the occupants what they were doing and they told the police they were "going uptown". The police did not give any reason for stopping the car. The police checked only the license of the driver and apparently did not ask the age of the occupants. Officer Connors asked the defendant whether he owned a manila envelope Connors had in his hand and the defendant said no. Connors called Sgt. Mastin who arrived on the scene within minutes. Mastin examined the envelope and its contents, and asked defendant about his connection with it. The defendant told Mastin the envelope was not his and Mastin permitted the car and all four occupants to proceed on their way. The police did not search the car nor the occupants.

Sergeant Mastin testified that he was called by Officers McKinney and Connors to the scene of a stopped car at around 12:45 A.M. on October 17th. Upon arrival at the scene Mastin was given the following information by the two officers: The officers thought there were juveniles in the car out after 11:00 P.M. curfew and they stopped the car to check the occupants to see if they were juveniles. When the car was stopped Connors observed the defendant, riding in the right front seat, put his arm out the car door and drop a brown manila envelope. Connors picked it up and asked defendant about it but he denied having possession of it. Mastin testified that after his arrival at the scene he looked in the envelope and found a substance that could have been marijuana. Mastin talked to the defendant who denied ever having the envelope. Mastin then permitted the car with defendant in it to proceed on its way.

Appellant contends that the police legally obtained the envelope containing marijuana because the defendant had abandoned it. It is true that the police may legally seize abandoned property. *Hardin* v. *State* (1970), 254 Ind. 56, 257 N. E. 2d 671. However, where police action triggers the abandonment, that action must be lawful or the evidence will be considered obtained in an illegal search and seizure within the meaning of the Fourth Amendment. *Rios* v. *U. S.* (1960), 364 U. S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688; *Williams* v. *U. S.*, 237 F. 2d 789 (D.C. Cir. 1956) ; *Hardin* v. *State, supra.* For purposes of the Fourth Amendment there is no real abandonment if there is no lawful arrest or detention in the first instance because the "primary illegality would taint the abandonment and as such, the abandonment could not justify the admission of evidence." *People* v. *Baldwin* (1969), 25 N. Y. 2d 66, 250 N. E. 2d 62. Therefore, the crucial issue is whether the police action in stopping the car, which precipitated the abandonment of the envelope, was lawful. If the police were justified in stopping the car then there was a "true abandonment" of the envelope by defendant, the evidence contained in the envelope was admissible in evidence and the trial court erred in suppressing it.

Since the police admittedly did not have a warrant the burden was on appellant at the pre-trial hearing to show that the police action resulting in the seizure fell within one of the exceptions to the warrant requirement of the Fourth Amendment. *Vale* v. *Louisiana* (1970), 399 U. S. 30, 90 S. Ct. 1969, 26 L. Ed. 2d 409; *Chimel* v. *California* (1969), 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685; *Jeffers* v. *U. S.* (1951), 342 U. S. 48, 72 S. Ct. 93, 96 L. Ed. 59; *McDonald* v. *U. S.* (1948), 335 U. S. 451, 69 S. Ct. 191, 93 L. Ed. 153. Appellant contends it sustained this burden by showing that the police were justified in stopping the car because they were checking to see whether the occupants were juveniles out on the streets in violation of the curfew.

After hearing all of the evidence the trial court held that

the appellant had failed to sustain its burden of showing that the police were justified in stopping the car and, therefore, the seizure of the marijuana was in violation of the Fourth Amendment. Since the trial court held against the party having the burden of proof, the appellant is seeking review of a negative finding by the trial court. On review of that finding this Court will not weigh the evidence nor determine the credibility of the witnesses but will construe all of the evidence and resolve all ambiguities in favor of the trial court finding. This Court will reverse a negative finding only when the evidence is without conflict and can lead to but one conclusion, and the trial court reached an opposite conclusion. It is only when the evidence in the record is all one way that its effect becomes a matter of law. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669; *Nationwide Mutual Ins.* v. *Day* (1967), 140 Ind. App. 564, 224 N. E. 2d 520.

Under the only law cited and relied on by appellant a violation of the curfew by a juvenile is not a criminal offense but is one of the acts constituting juvenile delinquence. That statute, I.C. 1971, 31-5-7-4, being § 9-3204(10), states:

"The words 'delinquent child' shall include any boy under the full age of eighteen years and any girl under the full age of eighteen years who:

\* \* \*

"(10) Wanders about the streets of any city, or in [on] or about any highway or any public place between the hours of eleven o'clock p.m. and five o'clock a.m. without being on any lawful business or occupation, except returning home or to his place of abode after attending a religious or educational meeting or social function sponsored by a church or school."

The appellant did not make any serious effort to convince the trial court of the validity of the police action. The evidence in this case did not even begin to show that the occupants of the car were in violation of that law. The appellant presented no evidence at the hearing, and did not produce even one of the officers who was present when the car was stopped. The only police officer who testified was not present

when the car was stopped and could only repeat in conclusory language what the other officers had told him, as follows:

"Q. And do you know of any reason why that car was stopped?

A. Hearsay again. The officers thought it was a car with juveniles and it was after midnight. They stopped them on this basis, to check to see if they were juveniles."

This hearsay was technically admissible evidence because unobjected to by the defendant, but that does not mean it was sufficient to establish a justification for the officers ■ stopping the car. In order to determine the reasonableness of the intrusion into defendant's privacy by the police conduct in stopping the car we must examine the *facts known to the officers at the time they stopped the car.* In *Terry* v. *Ohio* (1968), 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, the Supreme Court said:

"And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Cf. Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925) ; Beck v. State of Ohio, 379 U. S. 89, 96-97, 85 S. Ct. 223, 229, 13 L. Ed. 2d 142 (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, e.g. Beck v. Ohio, supra ; Rios v. United States, 364 U. S. 253, 80 S. Ct. 1431, 4 L. Ed. 2d 1688 (1960) ; Henry v. United States, 361 U. S. 98, 80 S. Ct. 168, 4 L. Ed. 2d 134 (1959). And simple ' "good faith on the part of the arresting officer is not enough." * * * If

subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers and effects," only in the discretion of the police.' Beck v. Ohio, supra, at 97, 85 S. Ct. at 229." 392 U. S. at 21-22.

Since the officers involved did not testify at the hearing we do not know what facts led them to believe the occupants of the car were under eighteen years of age. There was no evidence at the hearing that the officers even saw the occupants of the car. On the other hand the trial court could have considered the following factors in reaching its decision: (1) The trial court saw the defendant testify at the hearing and had an opportunity to observe how old he looked; (2) the officers did not tell the occupants of the car that they were being stopped to check their ages; (3) the officers checked only the driver's operating license and did not even ask anyone else their age; (4) none of the four were juveniles.

In addition, the State failed to have anyone testify that even one of the police officers knew at what age a person stops being a juvenile. It might be argued that this latter omission is unimportant and it can safely be *assumed* the officers knew that a person stops being subject to the juvenile delinquency statute when he reaches eighteen years of age. We believe this is a dangerous course, especially in light of certain testimony occurring at the trial while Officer Connors was on the stand:

"Q. They appeared to be *minors and persons of juvenile age,* is that correct?

A. They did." (Emphasis added.)

Although testimony at the trial could not be relevant to a ruling on a pre-trial motion to suppress, it does indicate a possible confusion by the prosecutor and the police officers who stopped the car between a "juvenile" and a "minor". They are not synonyms. A juvenile is one under eighteen years of age, Burns § 9-3204, *supra,* and a minor is one under twenty-one years of age. *Wells* v. *Wells* (1855), 6 Ind. 447.

A person can be a minor and still not be subject to the curfew statute quoted above.

The State also failed to present any evidence concerning the facts known to the police which would warrant a belief that the occupants of the car were "wandering about the streets" of New Castle rather than being on lawful business. There was no evidence as to what the police observed the car do, how long they observed the car, whether they had seen the car previously that night, whether they radioed for a check on the license plates, etc.

It is clear that the evidence construed in favor of the verdict is not without conflict and does not lead to a conclusion opposite the one reached by the trial court. Therefore, the trial court finding on the motion to suppress was not erroneous. Judgment affirmed.

Hunter and Prentice, JJ., concur; Givan, J., concurs in result; Arterburn, C.J., dissents with opinion.

## DISSENTING OPINION

ARTERBURN, C.J.—I disagree with the majority opinion for the reason that no search is involved in this case, and there is nothing in the Constitution which prevents an officer or anyone else from picking up something from the street that has been abandoned or thrown away by a defendant or any third party. I go further and state that this includes articles thrown away in the act of excitement or fear, whatever the cause may be. In *Von Hauger* v. *State* (1971), 255 Ind. 666, 266 N. E. 2d 197, the defendant dropped a package containing hypodermic needles and other apparatus used in drug injections and walked away when he saw the law enforcement officers. We held that the evidence so obtained was admissible. In *Mims et al.* v. *State* (1957), 236 Ind. 439, 140 N. E. 2d 878, the defendants threw jewelry which they had recently stolen out of the automobile in which they were fleeing. This was picked up by law enforcement officers. We held this sufficient circumstantial evidence to support the conviction (See

also *Patterson* v. *State* (1970), 253 Ind. 499, 262 N. E. 2d 520).

The defendant in this case was not searched nor seized. He was merely asked for his identification and driver's license. I think a police officer, and particularly a traffic officer, has not only the right, but at times the duty, to ask for the driver's license. In particular, I am thinking about road blocks that are necessary to be set up for the apprehension of fleeing criminals. Anything abandoned by fleeing persons is entirely open to seizure by anyone including police officers. The majority opinion is an unnecessary restriction upon law enforcement activities where a guilty conscience causes the party to flee or abandon articles which are incriminating. Again, I say there is no constitutional prohibition against the entry of the evidence which the appellant threw away or discarded in this case. It is an uncalled for stretching of the prohibition against unreasonable searches.

NOTE.—Reported in 269 N. E. 2d 874.