## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 23 2017, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jeffrey A. Baldwin
Tyler D. Helmond
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dejuan R. Wells,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 23, 2017<br><br>Court of Appeals Case No.<br>29A05-1610-CR-2273<br><br>Appeal from the Hamilton<br>Superior Court<br><br>The Honorable William J. Hughes,<br>Judge<br><br>Trial Court Cause No.<br>29D03-1507-F2-6161 |

**Mathias, Judge.**

[1]     Following a jury trial in Hamilton Superior Court, Dejuan R. Wells ("Wells") was convicted of Level 5 felony dealing in marijuana and Level 6 felony

possession of a narcotic drug. The trial court then found that Wells was a habitual offender. The court sentenced Wells to an aggregate term of ten years and ordered that the last two years of the sentence be served in community corrections. Wells appeals and presents four issues, which we restate as:

I. Whether the trial court properly admitted evidence discovered as a result of the traffic stop of Wells's vehicle;

II. Whether Wells's habitual offender adjudication is supported by sufficient evidence;

III. Whether the trial court abused its discretion by refusing a jury instruction tendered by Wells on a lesser included offense; and

IV. Whether the trial court abused its discretion in sentencing Wells.

We affirm.

## Facts and Procedural History

On the night of July 16, 2015, Officer Jarred Koopman ("Officer Koopman") of the Fishers Police Department was working the late shift with his police dog Harlej. A few minutes after 11:00 p.m., Officer Koopman observed a GMC Yukon sport utility vehicle approximately twenty-five feet in front of his vehicle. The temporary license plate on the vehicle had a plastic cover on it, and the license plate light appeared not to be working. Thus, Officer Koopman could not read the license plate. Officer Koopman pulled his patrol car even closer to the Yukon but could still not read the license plate even from ten to fifteen feet away. He therefore decided to pull the Yukon over. *See* Ind. Code § 9-18-2-26(b)(3), (4) (requiring that a license plate be securely fastened in a place

and position that is clearly visible and not obstructed or obscured by tires, bumpers, accessories, or other opaque objects); Ind. Code § 9-19-6-4(e) (requiring that a tail lamp or separate lamp be placed so as to illuminate the license plate with white light and make the plate "clearly legible from a distance of fifty (50) feet to the rear."). Fishers Police Officer Adam Brockman ("Officer Brockman"), who was nearby, also stopped to assist Officer Koopman during the traffic stop.

[4] Wells was driving the Yukon, and Bria Davis ("Davis") was in the front passenger seat. When Wells saw that he was being pulled over, he asked Davis to put a large amount of cash in her purse and told her to tell the police that it was her money. He also told Davis that "the stuff was in the back, the drugs." Tr. Vol. 2, p. 212. Officer Koopman approached the Yukon and spoke with Wells, who was very nervous and made no direct eye contact with the officer. While Officer Koopman spoke with Wells, Officer Brockman went to the passenger side window and spoke with Davis. As he did so, he noted a strong smell of raw marijuana coming from the vehicle. After obtaining identification from Wells and Davis, the officers went to Officer Koopman's patrol car. There, Officer Brockman informed Officer Koopman that he had smelled marijuana in the Yukon.

[5] The police then ordered Wells and Davis out of the car, and Officer Koopman took his dog Harlej to the Yukon to sniff the vehicle for illicit drugs. The dog "alerted" at the front driver's side door, indicating that she smelled an illicit substance. The officers then searched the Yukon, where they discovered a large

black duffle bag in between the back seats. Inside the duffle bag were twenty bags containing what was later determined to be marijuana, zip-top plastic bags, and digital scales with a green residue on the top. When searching Wells's person, the police found a pill bottle and $1,941 in cash. Inside the pill bottle were various prescription drugs in whole and half pills; several of the pills later tested positive for containing oxycodone. Inside Davis's purse the police found four mobile phones and $11,470 in cash. The police later searched a hotel room which led to the discovery of more contraband.

[6] The State charged Wells in eight counts: Count I, Level 3 felony dealing in a narcotic drug; Count II, Level 5 felony dealing in marijuana; Count III, Level 5 felony possession of a narcotic drug; Count IV, Class B misdemeanor possession of marijuana; Count V, Level 2 felony dealing in a narcotic drug; Count VI, Level 4 felony possession of a narcotic drug; Count VII, Level 6 felony possession of marijuana; and Count VIII, Level 4 felony unlawful possession of a firearm by a serious violent felon. The State also alleged that Wells was a habitual offender.

[7] Wells filed several pre-trial motions to suppress. The trial court granted these motions, and the evidence seized from the hotel room and a storage unit was suppressed. On August 1, 2016, Wells filed a fourth motion to suppress, this time arguing that the traffic stop was constitutionally improper and that the evidence seized as a result of the traffic stop, i.e., the marijuana, pills, and cash, should be suppressed. The trial court held a hearing on this motion on August 25, 2016, and denied the motion that same day.

[8] Prior to trial, the State dismissed Count VIII. A two-day jury trial began on September 6, 2016. Wells objected to the admission of the evidence found in the car, and the trial court overruled the objections. At the conclusion of the State's case-in-chief, the trial court granted Wells's request for a directed verdict as to Count I. At the conclusion of the trial, the jury found Wells guilty of Counts II (Level 5 felony dealing in marijuana), III (Level 6 felony possession of a narcotic drug as a lesser included offense of the charged offense of Level 5 felony possession of a narcotic drug), and IV (Class B misdemeanor possession of marijuana). The State then dismissed Counts V, VI, and VII. The trial court entered judgments of conviction on Counts II and III, but not on Count IV due to double jeopardy concerns. Wells waived his right to a jury trial on the habitual offender enhancement, and the trial court heard evidence on Wells's status as a habitual offender. On September 8, 2016, the court found Wells to be a habitual offender.

[9] A sentencing hearing was held on September 30, 2016. The court found as aggravating that Wells had a significant history of criminal and delinquent acts. The trial court also noted the evidence showing the full measure of Wells's extensive criminal activity in this case, including the evidence from the hotel room and storage facility that the trial court had ordered suppressed, and also noted Wells's attempts to place blame on Davis. The court found as mitigating that incarceration would be a hardship on Wells's family. The trial court determined that the aggravating factors outweighed the mitigating factors and sentenced Wells to five years on the Level 5 felony conviction, enhanced by an

additional five years due to the habitual offender finding, and a concurrent term of two and one-half years on the Level 6 felony conviction. The court also ordered that the last two years of Wells's sentence be served in community corrections. Wells now appeals.

## I. Admission of Evidence Found During Search of Vehicle

Wells first claims that the trial court abused its discretion when it denied his motion to suppress. He argues that the traffic stop was constitutionally impermissible and that the items seized from his vehicle and found on his person thereafter should have been suppressed and not admitted into evidence at trial.

### A. Standard of Review

Because Wells appeals following his conviction and sentence, his argument is that the trial court abused its discretion in admitting the evidence obtained as a result of the challenged search. *Jackson v. State*, 890 N.E.2d 11, 15 (Ind. Ct. App. 2008). Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection: we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id*. However, we must also consider the uncontested evidence favorable to the defendant. *Id*. "[W]hen an appellant's challenge to such a[n] [evidentiary] ruling is predicated on an argument that impugns the constitutionality of the search or seizure of

the evidence, it raises a question of law, and we consider that question de novo." *Guilmette v. State*, 14 N.E.3d 38, 40-41 (Ind. 2014).

### B. The Trial Court Did Not Misinterpret the Evidence

Wells first argues that the trial court "misinterpreted" the evidence when it stated, during the hearing on the motion to suppress,

> However, there is evidence that [Officer Koopman] couldn't see the plate from 50 feet and that was the basis of your stop. I don't know that I believe it and I don't know whether the jury will believe it or not, *but don't have anything else to believe it with* so your motion to suppress is denied on that basis only.

Tr. Vol. 2, p. 24 (emphasis added). Wells claims that the trial court's statement was inconsistent with the evidence.

Specifically, Wells argues that there was a conflict in the evidence with regard to the visibility of the license plate and that the trial court therefore did have "something else" to believe. Wells is referring to the testimony of his witness, William McCallister ("McCallister"), a retired police officer and private investigator, who testified that, when he checked the Yukon nine months after it had been impounded, he found that one of the two license plate lights was working. Wells thus argues that there was other evidence that the trial court could have believed.

The State notes that the trial court made this comment during its ruling on the motion to suppress, and Wells did not appeal the denial of his motion to

suppress. Therefore, the State argues, the trial court's comment during the motion to suppress is irrelevant to the issue on appeal, i.e., whether the trial court abused its discretion when it admitted the evidence. Although there is logic to the State's argument, we decline to reject Wells's claims on this ground alone. Instead, we reject Wells's claim on its merits.

[15]     That is, the trial court did not "misinterpret" the evidence before it. Officer Koopman testified that he was unable to see the license plate on the night in question even when he was closer than fifty feet from Wells's vehicle. McCallister's testimony did not contradict Officer Koopman's testimony. McCallister checked the license plate lights on the Yukon during the day in an impound lot. He was not present on the night Wells was pulled over and could not testify whether the license plate was "clearly legible" from at least fifty feet to the rear of the vehicle, as is required by statute. I.C. § 9-19-6-4(e).

[16]     The same is true for the photographs of the license plate which were admitted during McCallister's testimony. These photographs show that one of the license plate lights was working, but apparently dim; the other light was inoperable. The fact that one of the two license plate lights was working, dimly, nine months after the night in question does not contradict Officer Koopman's testimony that the license plate was not clearly legible from fifty feet away as required by statute.

### C. The Trial Court Did Not Misapply the Burden of Proof

In a similar vein, Wells argues that the trial court abused its discretion by placing the burden of proof on him to establish the *un*reasonableness of the warrantless search of his vehicle instead of placing the burden on the State to establish the reasonableness of the search. *See Weathers v. State*, 61 N.E.3d 279, 285 (Ind. Ct. App. 2016) (noting that the State bears the burden of proving that a warrantless search falls within an exception to the warrant requirement) (citing *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006)).

In addressing this claim, we first observe that there is a strong presumption that the trial court is aware of and properly followed the applicable law. *Crider v. State*, 984 N.E.2d 618, 624 (Ind. 2013) (citing *Dumas v. State*, 803 N.E.2d 1113, 1121 (Ind. 2004); *Moran v. State*, 622 N.E.2d 157, 159 (Ind. 1993)). It has long been established that the State bears the burden of establishing the reasonableness of a warrantless search. *See State v. Smithers*, 256 Ind. 512, 515, 269 N.E.2d 874, 876 (1971) (citing *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *McDonald v. United States*, 335 U.S. 451, 456 (1948)).

Against the backdrop of this strong presumption, and the long-standing rule that the State bears the burden of proof of showing the reasonableness of a warrantless search, Wells refers us again to the above-quoted comments made by the trial court judge while ruling from the bench on the motion to suppress, in which the court stated with regard to Officer Koopman's testimony that he could not see the license plate from fifty feet away: "I don't know that I believe

it and I don't know whether the jury will believe it or not, but I don't have anything else to believe[.]" Tr. Vol. 2, p. 24.

[20] Wells argues that the trial court's comment suggests that it was incumbent upon Wells to put forth something else for the trial court to believe, which he contends switched the burden from the State to him. In other words, Wells claims that, if the trial court did not know if it could believe Officer Koopman's testimony, then the State necessarily failed to carry its burden of proving the existence of an exception to the warrant requirement. We are unable to agree with Wells's interpretation of the trial court's statements.

[21] The trial court never stated that Wells had failed to prove anything. It simply noted that the State had produced evidence (Officer Koopman's testimony) that, *if credited*, would support the warrantless search of Wells's vehicle. Nothing directly contradicted Officer Koopman's testimony that he was unable to read the license plate on the night in question. Thus, we take the trial court's statement to mean that the State had met its burden of proof, and Wells had failed to adequately rebut the State's proof. In light of the strong presumption that the trial court judge knows the applicable law, we cannot say that the trial court's statements show that the trial court misapplied the burden of proof. The trial court's extemporaneous statements were, at most, inartful, and not indicative that the trial court had misapplied a basic black-letter rule of law.

### D. The Trial Court Did Not Leave the Question of Admissibility to the Jury

[22] Wells also argues that the trial court deferred to the jury the question of admissibility of the evidence seized as a result of the search of the vehicle. Wells focuses on the following statement from the trial court judge: "However, there is evidence that you couldn't see the plate from 50 feet and that was the basis of your stop. I don't know that I believe it and *I don't know whether the jury will believe it or not*[.]" Tr. Vol. 2, p. 24.

[23] Wells correctly notes that questions regarding the admissibility of evidence are for the judge, not the jury, to decide. *See Halliburton v. State*, 1 N.E.3d 670, 684 (Ind. 2013) ("The court and not the jury determines the admissibility of evidence, and the foundation for the admission of secondary evidence is a matter alone for the court and not for the jury."). Wells argues that the trial court's statement indicates that it was deferring to the jury the question of the admissibility of the evidence at issue in the motion to suppress. Again, we disagree.

[24] It is obvious that the trial court did not defer ruling on the motion to suppress or the admissibility of the evidence at issue. The trial court explicitly denied the motion to suppress and, at trial, overruled Wells's objections to the admission of this evidence. Wells even admits in his brief that "[the license plate question] was *not* presented to the jury." Appellant's Br. at 14 (emphasis added).

[25] We believe the trial court's statement was simply a recognition that, ultimately, it was for the jury to determine the credibility and weight to be given to Officer

Koopman's testimony at trial. It is fundamental that the jury, as the trier of fact, is the ultimate judge of the evidence. *See McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005) (noting that it is the jury's "exclusive province" to weigh evidence).

In short, we do not consider the trial court's statement to be grounds for reversing the trial court's ruling on the admissibility of the evidence seized as a result of the traffic stop.

## II. Sufficiency Evidence Supported the Habitual Offender Finding

Wells next argues that the State failed to present evidence sufficient to support the trial court's finding that Wells was a habitual offender. Upon a challenge to the sufficiency of the evidence to support a habitual offender finding, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Woods v. State*, 939 N.E.2d 676, 677 (Ind. Ct. App. 2010). Instead, we consider only the evidence most favorable to the trial court's determination, together with all of the reasonable and logical inferences to be drawn therefrom. *Id*. We will affirm the trial court's habitual offender determination if there is substantial evidence of probative value to support it, i.e., if a "reasonable trier of fact could conclude that the defendant was convicted of two previous separate and unrelated felonies beyond a reasonable doubt." *Flint v. State*, 750 N.E.2d 340, 341 (Ind. 2001).

The relevant portion of the habitual offender statute provides:

> A person convicted of a Level 5 felony is a habitual offender if
> the state proves beyond a reasonable doubt that:

(1) the person has been convicted of two (2) prior unrelated felonies;

(2) at least one (1) of the prior unrelated felonies is not a Level 6 felony or a Class D felony; and

(3) if the person is alleged to have committed a prior unrelated:

    (A) Level 5 felony;
    (B) Level 6 felony;
    (C) Class C felony; or
    (D) Class D felony;

not more than ten (10) years have elapsed between the time the person was released from imprisonment, probation, or parole (whichever is latest) and the time the person committed the current offense.

Ind. Code § 35-50-2-8(c).[1]

[29] Thus, the State was required to prove that Wells had two prior unrelated felonies, that at least one of the prior felonies was not a Level 6 felony or a Class D felony, and that, if one of the prior convictions was for a Level 5 or 6 felony or Class C or D felony, that not more than ten years had elapsed since Wells was released from incarceration, probation, or parole, and the date of his instant offense.[2]

---

[1] We refer to the version of the habitual offender statute that was effective July 1, 2015, as Wells committed his crimes on July 16, 2015.

[2] To be "unrelated," the commission of the second felony must be subsequent to the sentencing for the first, and the sentencing for the second felony must have preceded the commission of the current felony for which the enhanced sentence is being sought. *Warren v. State*, 769 N.E.2d 170, 171 n.2 (Ind. 2002). Failure to prove the proper sequence requires that the habitual offender determination be vacated. *Id*. Wells does not argue that the State failed to adequately prove the proper sequence of commission, conviction, and sentencing. He

[30] Here, the State alleged that Wells was convicted on October 11, 2006 of Class C felony possession of a firearm with an altered or obliterated serial number and then subsequently convicted on January 3, 2008 of Class C felony possession of a narcotic drug. Wells argues that the State failed to prove that he was the same individual who was convicted in these prior cases.

[31] The record before us establishes that Wells is an African-American male, with a date of birth of "12/28/1986," a Social Security number ending in **83, and an address of 5431 Hammock Glenn Drive in Indianapolis. At the habitual offender stage of the trial, the State asked the trial court, acting as the trier of fact, to take judicial notice of the court records for the cases it alleged proved that Wells had two prior unrelated convictions, specifically Cause No. 49G20-0801-FA-2474 ("Cause FA-2474") and Cause No. 49G21-0605-FC-96984 ("Cause FC-96984").

[32] The judicially noticed case records for Cause FA-2474 list a defendant named Dejuan R. Wells, a black male with a date of birth of "12/28/1986," a Social Security number ending in **83, and an address of 5431 Hammock Glen Drive, Indianapolis, Indiana, 46235. The case records for Cause FA-2474 further show that, on February 21, 2008, Dejuan R. Wells pleaded guilty to and was convicted of Class C felony possession of cocaine and was sentenced to three years thereon. The State also introduced into evidence the abstract of judgment

argues only that the State failed to prove that he is the same Dejuan R. Wells that that was the subject of the prior convictions.

from Cause FA-2474, which also shows that, on February 21, 2008, a Dejuan R. Wells was convicted of Class C felony possession of cocaine or narcotic drug and sentenced to three years executed. The plea agreement and charging information in Cause FA-2474 were also admitted into evidence, and the charging information charges a Dejuan Wells with a date of birth of "12/28/86." Ex. Vol., State's Ex. 24, p. 7. From this, the trial court, acting as the trier of fact, could readily conclude that the Dejuan R. Wells convicted of a C felony in Cause FA-2474 was the same Dejuan R. Wells convicted in the present case.

[33] Wells's main argument attacks the sufficiency of the evidence identifying him as the same individual who was convicted of Class C felony possession of a firearm with an altered or obliterated serial number in Cause FC-96984. Again, at the State's request, the trial court took judicial notice of the case records for Cause FC-96984. The judicially noticed court records for this cause list a defendant named Dejuan Wells, a black male with a Social Security number ending in **83, and an address of 5431 Hammock Glen Drive, Indianapolis. But the defendant information listed in this cause lists a date of birth of "12/**29**/86." Wells argues that the State "did not establish the habitual offender beyond a reasonable doubt because the two conflicting dates of birth [12/28/86 and 12/29/86] were listed." Appellant's Br. at 16. According to Wells, "[a]s long as all the identifiers (date of birth and social security number, for example) do not match, the State should not be said to have met its burden to prove the

habitual offender enhancement beyond a reasonable doubt." *Id*. This single inconsistency does not require reversal of the habitual offender adjudication.

[34] We agree instead with the State that it is much more likely that the listed date of birth in the case records of Cause FC-96984 is merely a typographical or scrivener's error. Indeed, in the chronological case summary for Cause FC-96984 the entry for the initial hearing shows that "Defendant states true name to be DEJUAN WELLS, and D.O.B. 12/**28**/86."[3] Thus, there was evidence that the defendant's date of birth in Cause FC-96984 was in fact December 28, 1986. This, in addition to this defendant having the same name, race, gender, social security number, and physical address as Wells, is more than sufficient to prove beyond a reasonable doubt that the defendant in Cause FC-96984 was Wells.[4]

---

[3] *See* https://public.courts.in.gov/mycase/#/vw/CaseSummary/eyJ2Ijp7IkNhc2VUb2tlbiI6Ik1UWTVNek V5TnpFeE1EVXdIPalU0TWpjNE5qWXhZVFk9In19.

[4] Wells also notes in his appellant's brief that he objected to the trial court considering the facts contained in the case records of which the trial court took judicial notice. He then states, "[t]here may be good reasons this Court would sustain the objection to using Odyssey records to establish the habitual offender." Appellant's Br. at 15-16 (footnote omitted). Wells, however, develops this argument no further, and we therefore consider it waived. *See Chappell v. State*, 966 N.E.2d 124, 133 n.7 (Ind. Ct. App. 2012) (the failure to fully develop an argument results in waiver of the issue on appeal); Ind. Appellate Rule 46(A)(8)(a) (requiring all arguments to be supported by citation and cogent reasoning). Waiver notwithstanding, the Odyssey case management system currently handles more than 70% of the caseload in Indiana's courts, will soon handle more than 85% of state caseload and will eventually be the exclusive case management system for all of Indiana's courts. Counsel's offhand comment, without any proof of inaccuracy, is ludicrous.

Also, we would be remiss if we did not note that Indiana Evidence Rule 201(b)(5), as amended effective January 1, 2010, "now permits courts to take judicial notice of 'records of a court of this state[.]'" *Horton v. State*, 51 N.E.3d 1154, 1160 (Ind. 2016). Court records are presumptively sources of facts "that cannot reasonably be questioned" "in the absence of evidence tending to rebut that presumption." *Id*. at 1161.

> And because Indiana's implementation of a unified statewide electronic case management system (CMS) is well underway, many court records will soon likewise be at the fingertips of any court, litigant, or member of the general public.

*Id*. 1161-62 (Ind. 2016).

[35] Accordingly, we hold that the State presented evidence sufficient to establish beyond a reasonable doubt that the Dejuan Wells that was convicted in Cause FA-2774 and Cause FC-96984 was the same Dejuan Wells in the present case. Wells's arguments to the contrary are little more than a request that we reweigh the evidence, which we will not do.

### III. Trial Court's Refusal to Give Lesser Included Offense Instruction

[36] Wells next contends that the trial court abused its discretion when it rejected his proposed jury instruction on the offense of dealing in marijuana as a Level 6 felony, which he argues was a lesser included offense to the charged offense of dealing in marijuana as a Level 5 felony. Wells argues that his tendered instruction was appropriate because the jury could reasonably conclude that he intended to deal less than ten pounds of marijuana, which is required to elevate the offense of dealing in marijuana to a Level 5 felony.

[37] To determine whether instructions on lesser included offenses should be given, we use the three-part analysis set forth in *Wright v. State*, 658 N .E.2d 563, 566

---

Wells's objection suggests that the trial court can take judicial notice of court records, but not the facts contained in the court records. This is contrary to the holding of *Horton*. Indeed, the *Horton* court itself took judicial notice that the online public docket for the predicate felony in that case indicated that the defendant had been previously convicted of Class A misdemeanor domestic battery, and held that this judicially-noticed fact constituted evidence that was "independently sufficient to establish the prior conviction on which Horton's instant felony conviction [for domestic battery with a prior conviction] rests." *Id*. at 1162. This court too has taken judicial notice of court records accessible through Indiana's implementation of the Odyssey case-management system. *See, e.g., In re D.P.*, No. 49A02-1610-JC-2367, ___ N.E.3d ___, 2017 WL 1179572, at *6 (Ind. Ct. App. Mar. 30, 2017) (holding that although it was preferable for DCS to present actual documents, the trial court could take judicial notice of court records to show evidence of father's conviction for domestic battery, and taking judicial notice of Odyssey case records to confirm that father had in fact been convicted of domestic battery).

(Ind. 1995). We first determine whether the lesser included offense is inherently included in the crime charged. *Id.* If not, we then determine whether the lesser included offense is factually included in the crime charged. *Id.* Lastly, if the lesser included offense is either inherently or factually included in the charged crime, we determine whether there is a serious evidentiary dispute such that the jury could determine that the defendant committed the lesser offense but not the greater. *Id.* at 566-67. If the jury could conclude that the lesser offense was committed but not the greater, the trial court should give the jury the requested instruction on the lesser offense. *Id.* at 567.

[38] If the trial court makes a finding on the record regarding the existence or absence of a substantial evidentiary dispute, we review the trial court's decision for an abuse of discretion. *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind. 1998). However, if the trial court rejects the tendered instruction on the basis of its view of the law, appellate review of the ruling is de novo. *Id.*

[39] Wells claims that his tendered instruction was a correct statement of the law. The trial court disagreed, and rejected the tendered instruction because the court believed the instruction was an inaccurate statement of the law. Thus, our review is de novo.

[40] The instruction tendered by Wells provided as follows:

> The crime of dealing in marijuana is defined by law as follows: A person who knowingly or intentionally possessed with intent to deliver marijuana commits dealing in marijuana[,] a Class A misdemeanor[.]

The offense is a Level 6 felony i[f] the amount of the drug involved is at least 30 grams but less than 10 pounds of marijuana[.]

The offense is a Level 5 felony i[f] the amount involved is at least 10 pounds of marijuana.

Before you may convict the defendant the state must prove each of the following beyond a reasonable doubt:

1. The defendant

2. Knowingly or intentionally

3. Possess[ed] with intent to deliver

4. Pure or adulterated marijuana

If the state fails to prove each of these elements beyond a reasonable doubt you must find the defendant not guilty of possession with intent to distribute marijuana as charged.

Appellant's Unopposed Motion to Correct Clerk's Record, Exhibit A.[5]

[41] Wells argues that the trial court should have given his tendered instruction because it was based on the relevant pattern jury instruction and because he should have been allowed to argue that he should not have been held responsible for the entire weight of the marijuana found in the car, especially because his companion Davis was convicted of dealing the very same marijuana. The State counters that the instruction was not a correct statement

---

[5] Wells's tendered instruction was not included in the clerk's record as originally submitted to this court. Accordingly, Wells filed an Unopposed Motion to Correct Clerk's Record, which we granted, thereby making the exhibit attached to the motion a part of the Record on Appeal.

of the law and that there was no serious evidentiary dispute regarding the amount of the marijuana.

[42] We conclude that the instruction tendered by Wells did not correctly state the law concerning lesser included offenses. An instruction on a lesser included offense "must explain the role of a lesser included offense and define those offenses for the jury." *Corley v. State*, 663 N.E.2d 175, 178 (Ind. Ct. App. 1996) (citing *Smith v. State*, 422 N.E.2d 1179, 1184 (Ind. 1981)), *abrogated in part on other grounds by Campbell v. State*, 19 N.E.3d 271 (Ind. 2014). A lesser included offense instruction must also inform the jury that, if it determines that the defendant did not commit the element or act which distinguishes the greater offense from the lesser, it can convict the defendant of the lesser included offense. *Id.* (citing *McNary v. State*, 428 N.E.2d 1248, 1252 (Ind. 1981)).

[43] Here, Wells's tendered instruction simply sets forth the elements of the crime of dealing in marijuana, which is generally a Class A misdemeanor. It also states that the offense is a Level 6 felony if the amount of marijuana involved is at least 30 grams but less than 10 pounds and a Level 5 felony if the amount involved is at least 10 pounds. Wells claims that this is an accurate statement of the law as provided by the dealing in marijuana statute.[6]

[44] Importantly, however, the tendered instruction did not explain the role of a lesser included offense to the jury nor did it inform the jury that, if it determined

---

[6] This is only true, however, if the defendant has a prior conviction for a drug dealing offense, a requirement that Wells's tendered instruction omitted. *See* Ind. Code § 35-48-4-10(c)(1), (d)(1).

that Wells committed the element or act which distinguishes the greater offense from the lesser, that it could convict Wells of the lesser offense but not the greater. The instruction was accordingly incomplete and insufficient and the trial court properly rejected it. *See id.* (holding that trial court properly rejected defendant's lesser included offense instruction which was incomplete in that it did not explain to the jury that, if it determined that defendant did not have requisite *mens rea* for murder, it could decide if he had the requisite *mens rea* to commit one of several lesser offenses).[7]

## IV. Trial Court's Sentencing Discretion

[45] Lastly, Wells claims that the trial court abused its discretion in sentencing him. Sentencing decisions are left to the sound discretion of the trial court, and we review the trial court's decision only for an abuse of this discretion. *Singh v. State*, 40 N.E.3d 981, 987 (Ind. Ct. App. 2015), *trans. denied* (citing *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007)). The trial court may abuse its sentencing discretion in a number of ways, including (1) wholly failing to enter a sentencing statement, (2) entering a sentencing statement that explains reasons for imposing the sentence but the record does not support the reasons, (3) the

---

[7] When the trial court noted the deficiency in Wells's tendered instruction, Wells's counsel admitted that he "should probably add at the bottom [of the instruction] on the elements, if the State proved the amount was greater, at least 30 grams but less than 5 grams you should find the Defendant guilty of a Level 6 felony and if you find that the amount involved is at least ten pounds you should find the Defendant guilty of a Level 5 felony." Tr. Vol. 3, p. 69. The trial court asked, "So you're wanting to add that . . . to your tender?" *Id.* However, Wells never tendered a written copy of his proposed corrected instruction. An oral request for a jury instruction is insufficient, and failure to tender the jury instruction in writing waives the claim on appeal. *Ketcham v. State*, 780 N.E.2d 1171, 1177 (Ind. Ct. App. 2003), *trans. denied*. Thus, to the extent that Wells argues that the trial court erred in refusing his orally tendered instruction, this claim is waived. *Id.*

sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or (4) the reasons given in the sentencing statement are improper as a matter of law. *Id.* (citing *Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012)).

[46] Wells argues that one of the reasons listed in the trial courts sentencing order was improper as a matter of law. Specifically, he claims that the trial court's sentencing statement referred to and was based partially on the evidence that was found in the hotel room, which was ultimately suppressed, and the charges that were based on this evidence but later dismissed when the evidence was suppressed. *See* Tr. Vol. 3, p. 139 ("I am going to take into account what he is convicted of and what all the stuff that didn't come in indicates he was really doing at the time he was convicted of these lesser offenses. I consider it to be an aggravating factor to have those kinds of weapons and gun, or guns and dollars and drugs in another location tied to him.").

[47] Wells, however, acknowledges that our supreme court has held that the fact that evidence was suppressed and excluded does not preclude the trial court from considering the suppressed and excluded evidence during sentencing. *Walker v. State*, 503 N.E.2d 883, 888 (Ind. 1987); *see also United States v. Sanders*, 743 F.3d 471, 472 (7th Cir. 2014) (noting that the Seventh Circuit Court of Appeals has held that the exclusionary rule does not apply at criminal sentencing and that "[e]very other court of appeals has come to the same conclusion) (citing *United States v. Brimah*, 214 F.3d 854, 858 (7th Cir. 2000)).

[48] Wells argues that *Walker* is distinguishable from the present case. He also argues that *Walker* should be reconsidered in light of "a sea change" in constitutional thinking about sentencing brought about by *Apprendi v. New Jersey*, 530 U.S. 466 (2000)." Appellants Br. at 21. We are unpersuaded by either argument.

[49] With regard to his argument that *Walker* is distinguishable, Wells contends that in *Walker*, the suppressed evidence, radios, were relevant to the count for which Walker was convicted, burglary. *See Walker*, 503 N.E.2d at 888. But the same is true here. Wells was convicted of dealing in marijuana and possession of a narcotic drug. The suppressed evidence from the hotel room included firearms and a large amount of cash. We cannot say that this evidence is irrelevant to the charges for which Wells was convicted.

[50] With regard to his argument that *Walker* should be reconsidered, we simply note that we have no power to reconsider the decisions of our supreme court. We have explained before that

> [w]e are bound by the decisions of our supreme court. Supreme court precedent is binding upon us until it is changed either by that court or by legislative enactment. While Indiana Appellate Rule 65(A) authorizes this Court to criticize existing law, it is not this court's role to "reconsider" supreme court decisions.

*Dragon v. State*, 774 N.E.2d 103, 107 (Ind. Ct. App. 2002) (citations omitted).[8]

Accordingly, we discern no abuse of the trial court's sentencing discretion.[9]

# Conclusion

[51] The trial court did not abuse its discretion when it admitted evidence discovered during the warrantless search of Wells's vehicle because there was evidence that Wells's license plate was not clearly legible from fifty feet to the rear of his vehicle as required by statute. Thus, Officer Koopman was justified in pulling over Wells's vehicle. The evidence before the trial court, including the judicially noticed court records, were sufficient to support Wells's habitual offender adjudication. The trial court did not abuse its discretion when it rejected the instruction Wells tendered regarding a lesser included offense because the

---

[8] Moreover, although *Walker* was decided before *Apprendi* and its progeny, the Seventh Circuit Court of Appeals held in its 2014 *Sanders* opinion, well after *Apprendi*, that the exclusionary rule does not apply at criminal sentencing, an opinion shared by all the other federal circuit courts of appeal. *See Sanders,* 743 F.3d at 472. Moreover, under Indiana's current advisory sentencing scheme, *Apprendi*, and its progeny *Blakely v. Washington*, 542 U.S. 296 (2004), are inapplicable. When the trial court sentences a defendant under the advisory sentencing scheme, the aggravating factors are not used to enhance the sentence beyond the "statutory maximum." *See Anglemyer*, 868 N.E.2d at 489. We accordingly fail to see how *Apprendi* or *Blakely* call for reconsideration of *Walker*.

[9] In addition to the suppressed evidence, the trial court also found as aggravating Wells's "horrendous criminal history." Tr. Vol. 3, pp. 150-51. Indeed, the pre-sentence investigation report shows that Wells had juvenile adjudications for what would be Class D felony possession of marijuana and Class D felony resisting law enforcement if committed by an adult. He also has adult criminal convictions for Class B felony dealing in cocaine or narcotic drug, Class C felony possession of a handgun with an altered serial number, Class C felony possession of cocaine or narcotic drug, Class D felony possession of marijuana, Class A misdemeanor possession of marijuana, and Class A misdemeanor operating a motor vehicle while intoxicated endangering a person. He also has had his probation revoked twice. Accordingly, even if we did conclude that the trial court's consideration of the suppressed evidence was improper, Wells would not prevail. *See Gleason v. State*, 965 N.E.2d 702, 712 (Ind. Ct. App. 2012) (holding that single aggravating factor of significant criminal history was sufficient to justify trial court's sentencing decision).

instruction was incomplete. Lastly, the trial court did not abuse its discretion by considering evidence that was previously suppressed when sentencing Wells.

[52] Affirmed.

Kirsch, J., and Altice, J., concur.