People v Cleveland (2025 NY Slip Op 50070(U))

[*1]

People v Cleveland

2025 NY Slip Op 50070(U)

Decided on January 24, 2025

Criminal Court Of The City Of New York, Bronx County

Gonzalez-Taylor, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 24, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Craig Cleveland, Defendant.

Docket No. CR-001563-23BX

For the Defendant: The Bronx Defenders
(by: Christopher Smith, Esq. and Grace Powell, Esq.)
For the People: Darcel D. Clark
Bronx District Attorney (by: Michelle Villaverde, ADA)

Yadhira González-Taylor, J.

On January 20, 2023, defendant was arrested and charged with assault in the second degree (Penal Law ["PL"] § 120.05(3), a class D Felony, reckless endangerment (PL § 120.25), a class D Felony, criminal mischief (PL §145.05[2]), a class E Felony, unlawful fleeing a police officer in a motor vehicle in the second degree (PL § 270.30), a class E Felony, leaving the scene of an accident without reporting (Vehicle and Traffic Law ["VTL"] § 600 [2][a]), a class E Felony, assault in the third degree (PL § 120.00[1]), resisting arrest (PL § 205.30), reckless driving (VTL § 1212), class A misdemeanors, harassment in the second degree (PL § 240.26[1]) and failure to comply with traffic control indications (VTL § 1111[d][1]), violations.
On January 27, 2023, the Grand Jury of Bronx County, impaneled in the Supreme Court for Term One, voted a true bill and by prosecutor's information charged defendant with the crimes of resisting arrest (PL § 205.30), obstructing governmental administration in the second degree (PL § 195.95), unlawful fleeing a police officer in a motor vehicle in the third degree (PL § 270.25), reckless driving (VTL § 1212) and criminal mischief in the fourth degree (PL § 145.00), all class A misdemeanors.
On March 20, 2024, via omnibus motion, defendant moved, inter alia, to suppress all physical evidence seized from defendant, or, in the alternative, for a Mapp/Dunaway/Ingle hearing. Defendant further moved to suppress any observations by police, or, in the alternative, for a Mapp/Dunaway hearing.
Additionally, defendant moved to preclude the prosecution from introducing at trial any evidence of his prior convictions or bad acts under Sandoval and Ventimiglia and additional relief as the Court deems proper.
The People submitted a response opposing the entirety of defense motions. On May 6, 2024, the Honorable Judge Eugene D. Bowen granted defendant a Mapp/Dunaway hearing. The [*2]hearing was conducted on December 18, 2024.
The People called one witness, PO Brian Jaquez of the 42nd precinct. Defendant didn't testify, nor did he present any witnesses.
After careful consideration of the evidence adduced at the hearing and relevant caselaw, defendant's motion to suppress all evidence under Mapp/Dunaway is DENIED. 
Findings of Fact
PO Brian Jaquez of the 42nd precinct testified credibly that he has been assigned to the 42nd precinct since July of 2024 and before that he was assigned to Bronx borough Conditions Command. He added that his duties and responsibilities include being a member of the public safety team and patrolling his assigned area to make sure everyone is safe. He also addresses quality of life issues. He has conducted over 100 arrests and has assisted in over 300 arrests. PO Jaquez testified that on January 20, 2023, he was present at Longwood Avenue and Bruckner Boulevard and was working as a police officer. It was there that he made observations that led him to arrest defendant Craig Cleveland.
At the Longwood Avenue and Bruckner Boulevard location, PO Jaquez and PO Brian observed a gray colored Hyundai vehicle with lights off and tinted windows. The vehicle passed PO Jaquez and made a left turn on 163rd Street toward Bruckner Boulevard. PO Jaquez indicated that he decided to follow the vehicle. As they followed the vehicle, they turned on their lights and sirens. Another police vehicle, a van being operated by Police Officer Vazquez, got in front of the vehicle and caused defendant to come to a stop. PO Jaquez repeatedly told the operator of the vehicle, identified by PO Jaquez as defendant, to lower the windows but defendant did not, instead he turned on the lights. PO Jaquez observed that the windows appeared to be heavily tinted, and defendant was the only occupant of the vehicle. PO Jaquez approached the vehicle from the driver side and PO Senat approached the vehicle from the right passenger side and other officers approached as well.
PO Jaquez described the location of Longwood Avenue and Bruckner Boulevard as containing both a main road and a service road with an island that separates the main and service roads. He indicated he is familiar with the location. PO Jaquez added that he again asked defendant to lower the window to speak with him and attempted to get identification from defendant. While this interaction was taking place, PO Jaquez was able to look inside the vehicle with a flashlight and he observed defendant was holding an iPad which defendant was holding up to the closed window.
Eventually, defendant provided an identification card ("ID") and lowered the window slightly and slid his ID through the window. Officer Mendez obtained the ID from defendant and ran the information through the NYPD database. The database revealed that defendant had two prior gun charges which, according to PO Jaquez, raised his level of suspicion. PO Gonzalez arrived and asked him to lower the window as well. Defendant appeared to be moving a lot and ignoring everything that was being said to him and continued to be on his iPad. PO Jaquez could not hear what defendant was saying in the vehicle. After numerous requests, defendant finally lowered the vehicle window when the sergeant asked him to while simultaneously an officer cracked the rear window. PO Jaquez indicated that he intended to arrest defendant for obstructing governmental administration for not listening or cooperating with the commands to lower the window during their interaction.
Defendant then reached in front of his seat while PO Alfonso had his arm in the window and another officer, PO Marnaraj indicated there was a hammer inside the vehicle. PO Alfonso [*3]responded by taking out his firearm and pointed the firearm at defendant as defendant continued reaching under the seat. According to PO Jaquez, PO Alfonso was pointing the firearm at defendant to make sure defendant didn't reach under the seat. PO Alfonso was shouting at defendant directing defendant to not move. Defendant drove off and struck the police van, which was position in front of defendant's vehicle. He then ran a red light and struck a civilian vehicle. PO Jaquez pursued defendant at high speed and observed defendant operating the vehicle at high speed, running through red lights as another officer, PO Manaraj pursued defendant as well.
PO Jaquez pursued defendant for several blocks until they reached a building where defendant left his vehicle and entered the building. PO Jaquez observed PO Manaraj run toward the building where he had observed defendant enter. PO Jaquez observed that defendant's vehicle had collided with a parked car.
PO Jaquez testified that no items were recovered from defendant's person, but the hammer observed inside the car was vouchered by police.
During cross examination, PO Jaquez testified that he filed paperwork concerning the arrest and he vouchered the hammer and different items inside the vehicle. He indicated he was in uniform during the arrest but could not recall if he had a taser. He added that he was with other officers who were also in uniform. Further, PO Jaquez stated that defendant was stopped solely because of the tints on his windows and for not having headlights and nothing else. He added that they first noticed the vehicle on East 163rd Street and Simpson Avenue around 9:00 p.m. and it was dark out. The vehicle was travelling southbound, and the police officers were travelling northbound. The police officers made a U-turn and got behind defendant's vehicle. When PO Jaquez approached defendant's vehicle, there were at least five police officers surrounding the vehicle. Jaquez reiterated that the police van was placed in front of defendant's vehicle close to the island that divided the service and main lanes so defendant couldn't move forward to get past the van. PO Jaquez further testified that his vehicle was parked behind defendant's and their lights were active and when they walked to the driver's side of the car, they were able to see with the assistance of a flashlight inside the car. PO Jaquez was able to see defendant through the window and could make out the outline of defendant's body and braids but was not able to see the steering wheel.
PO Jaquez estimated that the windows were dark and "were below 70 percent" but he could not give a specific number. He added that there were streetlights lighting the location of the stop. Further, that the window of the driver side did come down at some point where there was an exchange with the driver (defendant). PO Jaquez testified that they asked defendant why he was calling a lawyer and could not understand why the situation was escalating since PO Jaquez merely wanted to speak with him. During the exchange PO Jaquez heard defendant state that he was calling his wife and that his wife was five minutes away. PO Jaquez speculated that defendant might be an emotionally disturbed person going through an event as he was very perturbed. PO Jaquez further suspected that defendant may have smoked marijuana.
After the arrest, PO Jaquez conducted an inventory search where he inspected the vehicle in what he described to be a "bumper-to-bumper" manner. Asked again about the initial stop, PO Jaquez stated that PO Alfonso was with him when the car was originally stopped. PO Alfonso put his arm inside the vehicle, but PO Jaquez could not recall if PO Alfonso grabbed defendant. PO Jaquez could not recall if PO Alfonso put the gun to defendant's head and could not confirm if PO Alfonso had his finger on the trigger. PO Jaquez confirmed that he heard PO Alfonso yell at defendant but could not recall if PO Alfonso said he would blow defendant's head off. PO [*4]Jaquez confirmed that defendant was apprehended on the fourth floor of the building defendant ran into.
Defendant's Contentions
Defendant contends that the People's sole witness was inconsistent because although PO Jaquez testified that he noticed that defendant's vehicle's headlights were off, he also asserted that from where he was positioned he was behind defendant and, thereafter, he was in front of defendant's vehicle after he did a U-turn; hence, defendant posits that PO Jaquez did not have a good occasion to observe the vehicle prior to the stop. Moreover, defense counsel maintains that a certain degree of tinting is permitted on cars and, here, PO Jaquez failed to state the basis for his belief that defendant's tints were beyond what is authorized by statute. Nor did PO Jaquez provide any indication of his training for identifying excessive tints to establish whether defendant was operating a vehicle with excessively tinted windows.
Defendant further contends that the People did not proffer evidence that officers measured the tint on his windows to confirm whether the tint violated the VTL, which would have provided either an objective basis or corroborative evidence for that conclusion. Defendant also contends that the police exceeded the scope of the permissible traffic stop without probable cause to do so and based on the police officer's behavior, defendant was not free to leave as he was surrounded with a marked RMP parked perpendicular in front of his car- as indicated by PO Jaquez who testified that the police vehicle was placed in that location to stop defendant from leaving.
Defendant further contends that the officers did not have probable cause to arrest him for the crime of obstruction of governmental administration as all that had occurred until the point of his arrest was that he waited for his wife to come to the scene, and he requested to speak with an attorney.
Defendant further asserts that since the police had no probable cause to arrest him it follows that they also lacked lawful authority to arrest him for resisting arrest, and for obstructing a governmental function.
The People's Contentions
The People proffered that their sole witness testified credibly and police interaction with defendant commenced after he was observed operating his car without the headlights on. Further, that the officer approached defendant's vehicle and could only see through the windows using a flashlight because of the excessiveness of his window tints. The People submit that having excessive window tints was not the only basis for the car stop where defendant was also operating his car without headlights.
The People further submit that when officers learned that defendant had open cases this heightened their concern and, coupled with his failure to follow directions or instructions, the officers had probable cause to place defendant under arrest for obstructing governmental administration. The People assert that the level of suspicion was raised when officers observed defendant reaching toward the center of his vehicle which made them concerned for their own safety and the public's safety. The People argue that defendant's actions, to wit: driving away from the stop, crashing into another vehicle and driving away from that accident, provided officers with probable cause to arrest him for leaving the scene of the accident, reckless driving, and resisting arrest.
Conclusions of Law
Mapp/Dunaway
The People have the burden of presenting sufficient evidence of reasonable cause to show the legality of police conduct at suppression hearings (see People v Baldwin, 25 NY2d 66, 302 NYS2d 571, 250 NE2d 62 [1969]; People v Malinsky, 15 NY2d 86, 262 NYS2d 65, 209 NE2d 694 [1965]). The People meet their burden when they present credible evidence and facts, not just conclusions or beliefs of their witnesses (see People v Berrios, 28 NY2d 361, 321 NYS2d 884, 270 NE2d 709 [1971]). The People must demonstrate that the circumstances surrounding the officer's observations provided the officer with the authority to act.
Once the People meet their initial burden, the burden shifts to the defendant to demonstrate, by a preponderance of the evidence, the illegality of the police conduct in question (see People v Berrios, supra). Illegally obtained evidence is inadmissible at trial (see Mapp v Ohio, 367 US 643, 81 SCt 1684, 6 LEd2d 1081 [1961]).
Here, the arresting officer observed defendant operating a grey Hyundai vehicle, after dark, with no headlights turned on (tr at 11-12). The officer also testified that he observed what he believed to be excessively tinted windows (tr at 13). This provided sufficient articulable facts to stop defendant as he was operating his vehicle in violation of the VTL which required that he had two working headlamps (also commonly referred to as headlights) to illuminate the roadway, as a matter of public safety.
VTL 375.2(a)(1) provides in pertinent part that:
Every motor vehicle except a motorcycle, driven upon a public highway during the period from one-half hour after sunset to one-half hour before sunrise or at any other time when windshield wipers are in use, as a result of rain, sleet, snow, hail or other unfavorable atmospheric condition, and at such other times as visibility for a distance of one thousand feet ahead of such motor vehicle is not clear, shall display:
1. at least two lighted head lamps on the front, one on each side, having light sources of equal power;
VTL 375.12-a(b)(1) and VTL 375.12-a(b)(2) provide in pertinent part that:
(b) No person shall operate any motor vehicle upon any public highway, road or street:
(1) the front windshield of which is composed of, covered by or treated with any material which has a light transmittance of less than seventy percent unless such materials are limited to the uppermost six inches of the windshield; or
(2) the sidewings or side windows of which on either side forward of or adjacent to the operator's seat are composed of, covered by or treated with any material which has a light transmittance of less than seventy percent.
If a police officer has reasonable suspicion that the Vehicle and Traffic Law has been violated, the stop of the motorist is justified so long as the stop is not motivated by "mere whim, caprice, or idle curiosity" (see People v Robinson, 97 NY2d 341, 348-349, 741 NYS2d 147, 767 NE2d 638 [2001]; and People v Ingle, 36 NY2d 413, 369 NYS2d 67, 330 NE2d 39 [1975]).
The observation of defendant operating the vehicle without headlights and the appearance of the possibility that he was operating the vehicle with excessively tinted windows provided PO Jaquez and the other officers with sufficient probable cause to direct defendant to pull over as they would have been well within their duty to act under VTL § 375.2(a)(1) and VTL § 375.12-a(b)(1) (see Dunaway v New York, 442 US 200, 99 SCt 2248 ([1979]; People v DeBour, 40 NY2d 210, 352 NE2d 562 [1976]; People v Ellis, 169 AD2d 838, 565 NYS2d 207 [*5][2d Dept 1991]; People v Wohlers, 138 AD2d 957, 526 NYS.2d 290 [4th Dept 1988]; People v Mathis, 136 AD2d 746, 523 NYS2d 915 [2d Dept 1988]; People v Simmons, 58 AD2d 524, 395 NYS2d 188 [1st Dept 1977]; People v Hanson, 5 Misc 3d 67, 785 NYS2d 825 [2d Dept App Term 2004]).
The situation escalated when defendant refused to comply with directives to put his window down and provide identification to the police officers who were investigating a violation of the VTL. The level of suspicion was raised when defendant was observed reaching into the center of his vehicle and PO Marnaraj observed the presence of a hammer within defendant's reach. Defendant's reaction of driving away, crashing into another vehicle and then absconding further escalated the encounter and provided additional probable cause to arrest defendant for leaving the scene of an accident [FN1]
and reckless driving.
Thus, at the time of the street encounter, PO Jaquez had probable cause to arrest defendant for leaving the scene of an incident without reporting, obstructing governmental administration, unlawfully fleeing a police officer, and reckless driving (see People v Johnson, 140 AD3d 978, 34 NYS3d 120 [2d Dept 2016]; People v Tieman, 132 AD3d 703, 17 NYS3d 743 [2d Dept 2015]; People v Kowalski, 291 AD2d 669, 738 NYS2d 427 [3d Dept]).
The record at bar demonstrates that no physical evidence was recovered in this case and defendant was not charged with possessing the hammer observed by PO Marnaraj as a weapon. Therefore, defendant's motion to suppress physical evidence pursuant to Mapp is DENIED as moot.
Based upon the foregoing, defendant's Dunaway motion to suppress police observations and all evidence flowing from therein is DENIED.
The Sandoval/Ventimiglia portions of defendant's motion are referred to the trial court's discretion.
This constitutes the decision and order of the Court.
Dated: January 24, 2025
Bronx, New York
Hon. Yadhira González-Taylor, J.C.C.

Footnotes

Footnote 1:Defendant was initially charged with leaving the scene of an incident without reporting (VTL § 600) (2)(a), a Felony. The Grand Jury elected to not charge him with that charge. However, viewing the circumstances of the stop in the totality of the circumstances from the perspective of the observations of the arresting officers, it is clear that at the time of the street interaction, the arresting officer had probable cause to believe that defendant committed the crime of leaving the scene of an incident without reporting in violation of VTL§ 600 as crashed into another vehicle and continued to operate his vehicle without stopping to exchange information with the operator of that vehicle.